Filed 11/13/13  P. v. Maciel CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MATTHEW MACIEL,<br><br>    Defendant and Appellant. | F064369<br><br>(Super. Ct. No. VCF229329)<br><br><br>**OPINION** |

---

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County.  Valeriano Saucedo, Judge.

Michelle May Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Poochigian, J. and Franson, J.

Matthew Maciel brutally attacked the 17-year-old victim as she slept in her bed. He pled guilty to assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] and residential burglary (§ 459). In addition, he admitted he caused great bodily injury within the meaning of section 12022.7, subdivision (a) and used a dangerous weapon within the meaning of section 12022, subdivision (b)(1). He was sentenced to a prison term of nine years.

Maciel asserts that portions of his sentence violate section 654 and therefore must be stayed. Because he did not obtain a certificate of probable cause as required by section 1237.5, these claims are not cognizable. He also makes several arguments relating to technical issues that do not affect the sentence. We find two of these issues require remand of the matter to permit the trial court to correct the sentencing order and abstract of judgment. In all other respects we affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

As this case concerns only sentencing issues, only a short summary of the events leading to Maciel's plea is required. Maciel had lived with the victim's family as a foster child in his mid to late teens. He had been asked to move out because of behavior problems. However, the victim's family remained in contact with Maciel, providing assistance periodically as he made his way toward college.

On the night of January 28, 2009, Maciel rode his bicycle to the family home. He entered the garage and obtained duct tape and a rod used in a barbecue rotisserie. Maciel then went to the victim's bedroom where he stabbed her repeatedly with the rod, causing serious bodily injury. Maciel claimed schizophrenic delusions caused him to believe the victim was being attacked, and in his mind he acted to protect the victim.[2] The family

---

[1]    All statutory references are to the Penal Code unless otherwise stated.

[2]    Maciel was diagnosed with significant psychological disorders, and it appears that for a time the criminal proceedings were suspended because of his disorders.

felt Maciel acted to hurt the family because they had forced him to leave the home and that his claims of delusion were simply manipulative behavior.

Maciel was charged with attempted murder (§§ 664, 187) and burglary of a residence (§ 459). Each count also alleged Maciel inflicted great bodily injury within the meaning of section 12022.7, subdivision (a), and personally used a deadly weapon within the meaning of section 12022, subdivision (b)(1).

Prior to trial, the People and Maciel reached an agreement resulting in Maciel pleading guilty to the reduced charge of assault with force likely to cause great bodily injury (§ 245, subd. (a)(1)) and to the remaining charges and enhancements in the complaint. The trial court imposed a sentence of nine years composed of the midterm sentence of four years on the burglary count and a consecutive term of one year (one-third the midterm) for the assault count, enhanced by consecutive terms of three years pursuant to section 12022.7, subdivision (a) and one year pursuant to section 12022, subdivision (b)(1).

## DISCUSSION

### I.    Section 654

The primary issue on appeal is the propriety of the sentence imposed by the trial court. Maciel asserts that section 654 precludes punishment of both the burglary and assault counts because they arose out of the same course of conduct. The People assert the issue is not cognizable because Maciel failed to obtain a certificate of probable cause. In his reply brief, Maciel asserts, in essence, the plea agreement between the parties permitted the trial court to choose only a six- or eight-year term.

Maciel relies on "the expressly stated agreement of the parties that sentences of 6 years and 8 years were permissible under the prosecution's plea offer that became a plea agreement when … Maciel accepted it" in an effort to avoid the certificate of probable cause requirement. The folly of this argument is obvious when the record is analyzed.

3.

The first indication in the record that Maciel might plead to the charges is found at the hearing on September 29, 2009, where Maciel's counsel stated he would like to memorialize a lengthy discussion that had occurred off the record. Maciel's counsel stated:

> "Basically, the People in this case [are] going to offer in Count 1 a charge of 245 and then in Count 2 a charge of 459 first [degree] which is [an] assault with force likely to cause great bodily injury and first-degree burglary. There were also special allegations of great bodily injury and I believe personal use of a -- of a weapon if I'm not mistaken.

> "***We were discussing a sentencing range with a maximum of 11 years***.

> "We were also discussing the proposal by the defense to possibly have defendant conserved or have a similar disposition of the case that would provide for … Maciel's long-term treatment, and I wanted to have the opportunity to consult with [a] defense expert, possibly put that in a written form for the court.

> "***The court indicated that -- that the likely outcome, although no promises have been made, if the court were to send my client to state prison would probably be either six or eight years. However, there was no firm indicated sentence given today***, and what … Maciel at this point is requesting, [is] some additional time to consider this offer." (Boldface and italics added.)

The prosecutor then agreed with these statements.

There was nothing in the comments made at the September 29 hearing that would suggest there was any agreement or promise that the maximum sentence to which Maciel would be exposed was eight years. Indeed, when discussing the possibility of a six- to eight- year sentence, Maciel's counsel confirmed (1) no promises were made, and (2) no firm indicated sentence was given by the trial court.

Maciel entered his plea on October 21, 2011. At that hearing, several comments, which were not contradicted, confirm that Maciel was not promised a sentence of anything less than a maximum prison term of 11 years. Maciel's counsel began by

4.

confirming Maciel was ready to accept the offer the People made at the September 29 hearing. The prosecutor then confirmed he was moving to amend count 1 to a violation of section 245, subdivision (a)(1), "assault with a deadly weapon," while retaining both enhancements in the count "*for a total maximum exposure of 11 years.*" (Boldface and italics added.)

The trial court then explained to Maciel that it would be taking his plea and confirmed, "What the attorneys have recited for the record is correct. *Your maximum exposure is 11 years.* You will be sentenced to state prison. And you will be placed on parole for up to three years." (Boldface and italics added.) There was no mention at this hearing of a possible sentence of six or eight years.

These proceedings indisputably establish that (1) neither the trial court nor the prosecutor ever promised that Maciel would be sentenced to a term of either six or eight years, and (2) Maciel faced a maximum exposure of 11 years as a result of his plea. The record conclusively establishes the offer of the People permitted Maciel to plead to reduced charges resulting in a maximum term of imprisonment of 11 years.[3] Maciel retained the right to argue for a lesser sentence, but the exact length of the sentence was to be determined by the trial court at the sentencing hearing.[4] Accordingly, we reject Maciel's argument that contract principles (including claims of estoppel, waiver, lack of appellate jurisdiction, and violation of his right to due process) preclude the sentence

---

[3]     Maciel spends considerable time arguing the comments made by his counsel at the sentencing hearing somehow support his contention. Clearly, they do not aid his case as counsel's recollections of the agreement are proven wrong by the record.

[4]     We also reject Maciel's claim that a sentence of 11 years could not be imposed because he never so agreed. The fundamental flaw in this argument is that there was not an agreement to a specific sentence. The People offered, and Maciel agreed, that he would plead to certain charges and enhancements and then be sentenced by the trial court to a term of no more than 11 years in state prison. Any other reading of the proceedings is untenable.

imposed because the agreement limited the trial court to a prison term of six or eight years.  The record establishes the plea agreement did not include a specific term of imprisonment.**5**

Having established there was no agreement that Maciel would be sentenced to a term of either six or eight years, the issue is whether, as the People assert, Maciel was required to obtain a certificate of probable cause before he could pursue his claim that section 654 precluded imposition of sentence on both counts 1 and 2.

The People cite two cases to support their argument, *People v. Cuevas* (2008) 44 Cal.4th 374 (*Cuevas*) and *People v. Shelton* (2006) 37 Cal.4th 759 (*Shelton*).  We begin with section 1237.5, which provides that a defendant who pleads guilty cannot appeal from the ensuing judgment unless he obtains a certificate of probable cause from the trial court before the appeal is filed.  The Supreme Court has established that despite the broad language of section 1237.5, "'two types of issues may be raised on appeal following a guilty or nolo plea without the need for a certificate:  issues relating to the validity of a search and seizure, for which an appeal is provided under [Penal Code] section 1538.5, subdivision (m), and issues regarding proceedings held subsequent to the plea for the purpose of determining the degree of the crime and the penalty to be imposed.' [Citation.]"  (*Shelton,* at p. 766.)

In *Shelton*, the defendant entered a guilty plea to two charges after the parties agreed the maximum sentence he would receive was three years eight months.  The trial court imposed this sentence, which consisted of three years on one count and eight months on the second count (one-third the midterm).  On appeal, the defendant argued

---

**5**     A contract is not formed unless there is mutual consent.  (Civ. Code, § 1550.) Consent is not mutual unless both parties agree upon the same thing.  (*Id.*, § 1580.)  The record establishes the parties never agreed Maciel would receive a six- or eight-year term.

the sentence violated section 654 because both charges arose from the same course of conduct.

The Supreme Court began by observing that the requirements of section 1237.5 and its two exceptions "are embodied in rule 30(b)(4) of the California Rules of Court,[6] which provides that on appeal in a criminal case from a superior court judgment after a plea of guilty or nolo contendere, a defendant must apply for and obtain a certificate of probable cause as required by Penal Code section 1237.5 unless 'the notice of appeal states that the appeal is based on: [¶] (A) the denial of a motion to suppress evidence under Penal Code section 1538.5, or [¶] (B) grounds that arose after entry of the plea and do not affect the plea's validity.'" (*Shelton, supra,* 37 Cal.4th at p. 766.)

The defendant argued a certificate of probable cause was not necessary because his assertion that section 654 precluded imposition of sentence on the second count was merely another way to argue for a sentence less than the maximum, a right he retained under the plea agreement. The Supreme Court disagreed. Applying general contract principles, the Supreme Court concluded that "the specification of a maximum sentence or lid in a plea agreement normally implies a mutual understanding of the defendant and the prosecutor that the specified maximum term is one that the trial court may lawfully impose and also a mutual understanding that, absent the agreement for the lid, the trial court might lawfully impose an even longer term. [¶] Viewed in this light, when a plea agreement includes a specified maximum sentence, a provision recognizing the defendant's right to 'argue for a lesser term' is generally understood to mean only that the defendant may urge the trial court to exercise its sentencing discretion in favor of imposing a punishment that is less severe than the maximum punishment authorized by law. In this case, it is reasonable to conclude that both the prosecutor and the trial court

---

[6]    California Rules of Court, rule 30(b)(4) has been renumbered without substantive change as rule 8.304(b).

7.

believed, when the plea bargain was made and accepted by the court, that defendant understood it in the same manner, as reserving to him a right to argue for a sentence less than the specified maximum of three years and eight months only on the ground that the trial court should impose a lesser sentence in the exercise of its sentencing discretion, and not on the ground that the trial court lacked authority to impose the specified maximum sentence." (*Shelton, supra,* 37 Cal.4th at pp. 768-769.)

Because the mutual understanding of the parties limited the defendant to argue for a lesser sentence than the maximum agreed upon by the parties, the Supreme Court held that a challenge asserting the sentence was precluded by section 654 was in substance a challenge to the plea's validity requiring a certificate of probable cause. (*Shelton, supra,* 37 Cal.4th at p. 769.) The Supreme Court noted, however, that the parties could enter into a negotiated disposition that would reserve the right to challenge the sentence imposed as violating section 654. (*Shelton,* at p. 769.) Since the record did not contain any such reservation, and a certificate of probable cause was not obtained, the defendant could not challenge the sentence imposed on the basis of section 654. (*Shelton,* at p. 769.)

*Cuevas* presented a slight variation on *Shelton*. Cuevas pled to a variety of crimes and agreed the maximum term of confinement for the crimes to which he pled was 37 years. After the trial court sentenced Cuevas to a lengthy term, Cuevas argued section 654 precluded portions of his sentence. The Supreme Court noted Cuevas was in a slightly different position when compared to the defendant in *Shelton*. In *Shelton*, the defendant agreed to a sentence lid, i.e., a sentence less than that which could be imposed for the charges to which he pled. In *Cuevas* the agreement permitted Cuevas to plead to crimes less than that which had been charged, and the total possible sentence was that authorized by law for the crimes to which Cuevas pled. However, the maximum sentence faced by Cuevas was considerably less than the maximum sentence he faced if convicted of the charged crimes.

The Supreme Court concluded, "For purposes of the certificate of probable cause requirement, the critical question is whether defendant's section 654 challenge to his sentence is in substance a challenge to the validity of his plea. [Citations.] In other words, the question is whether defendant 'seeks only to raise [an] issue[] reserved by the plea agreement, and as to which he did not expressly waive the right to appeal.' [Citations.] We conclude that defendant's plea agreement did not reserve such a postplea challenge because the maximum possible sentence defendant faced was 'part and parcel of the plea agreement he negotiated with the People.' [Citation.]" (*Cuevas, supra,* 44 Cal.4th at p. 381; see also *People v. Young* (2000) 77 Cal.App.4th 827, 833 [attack on maximum sentence to which defendant agreed was an effort to unilaterally alter his agreement].)

Maciel finds himself in the identical position as the defendant in *Cuevas*. The record reveals that Maciel agreed to plead to two counts, plus enhancements, with the understanding that he would be sentenced to prison for a term not to exceed 11 years, the maximum authorized by law. There was no reservation of the right to challenge the sentence imposed on the basis that it violated section 654. The sentence Maciel received fell within the express agreement of the parties. Accordingly, Maciel's argument that section 654 precludes the sentence imposed is an attack on the trial court's authority to impose consecutive terms for these counts, which is an attack on the plea agreement and requires a certificate of probable cause. (*Cuevas, supra,* 44 Cal.4th at p. 384; *Shelton, supra,* 37 Cal.4th at p. 769) The absence of a certificate of probable cause precludes our consideration of the argument.[7] (*Cuevas,* at p. 384)

---

[7] The failure to obtain a certificate of probable cause also precludes consideration of Maciel's argument that the weapons use enhancement on the burglary count should have been stayed pursuant to section 654. We also need not consider Maciel's argument that the fines imposed must be reduced if the sentence is reduced.

## II.    The Probation Report

Maciel makes a rather unique argument in an attempt to attack his sentence.  He claims remand for resentencing is required because the trial court "relied" on the probation report, and the probation officer failed to consider the applicability of section 654.  Maciel argues there are two reasons why error occurred.  Both arguments, however, are based on the assertion that trial court relied on the recommendation of the probation officer in imposing sentence on Maciel.

We reject the argument for two reasons.  First, this is a second attempt to attack the validity of the sentence, which requires a certificate of probable cause.  We repeat, the sentence imposed was within the maximum sentence to which Maciel agreed and thus was part and parcel of the plea agreement.  In this vein, it is not surprising that the probation officer did not consider the applicability of section 654 because Maciel had already agreed it was inapplicable when he accepted the People's offer.

Second, we find nothing in the record to suggest the trial court "relied" on the recommendation of the probation officer to the extent that it transferred its obligation to impose sentence to the probation officer.

The sentencing hearing was long and emotional for all involved.  The victim's family made statements to the trial court and presented a statement on behalf of the victim describing the physical and emotional damage caused by Maciel.  The prosecution argued for the maximum term of 11 years, which was calculated by imposing the maximum term of six years on count 1, plus enhancements and one-third the midterm for count 2.  Maciel's counsel implored the trial court to impose a term of two years, asserting that Maciel's mental illness begged for leniency.  The probation officer provided two recommendations for possible sentencing for Maciel, one with a total

10.

sentence of nine years (option one) and the other with a total sentence of eight years (option two).[8]

The trial court thus was presented with numerous possible sentences ranging from two years to 11 years. The trial court chose a term of nine years and merely relied on the probation report to achieve this result.

> "Counsel, I have considered this matter, and when we discussed this matter, I said to you that I would consider it. I did not give an indicated sentence. We talked about a range. Each of you argued to me what would be an appropriate disposition, and I said it would not be the low end, it would not be the high end, I would find something that I thought would be appropriate.

> "Considering all the factors that have been presented here, I believe that option one that probation presents to the Court is the best option under the circumstances. That option recommends a term of nine years. It is not the 11 that the [P]eople seek. It's not the lower term, which Mr. Maciel seeks.

> "Counsel, I intend [to] impose nine years on this matter."

This colloquy establishes the trial court exercised its discretion to impose a term of nine years. The fact that this is a term presented by the probation officer does not create reliance and, in fact, is no different than had the trial court followed the sentence recommended by Maciel's counsel. The record establishes the trial court determined the appropriate sentence to be imposed on Maciel within the confines of the plea agreement.

III.    **Weapons Use Enhancement on Count 1**

Maciel pled to commission of assault with a deadly weapon (§ 245, subd. (a)(1)) in count 1. In addition, Maciel admitted he had used a deadly weapon within the meaning of section 12022, subdivision (b)(1). The trial court imposed a sentence of one

---

[8]    The difference was that option two recommended that the sentence on count 2 be imposed consecutively.

year for the crime (one-third the midterm). The sentencing order indicates the trial court stayed sentences on the section 12022 enhancement.

Section 12022, subdivision (b)(1) requires imposition of an additional term of one year when the defendant uses a dangerous or deadly weapon during the commission of a felony, "unless use of a deadly or dangerous weapon is an element of that offense." Maciel contends, and the People concede, that an element of a violation of section 245, subdivision (a)(1) is the use of a dangerous or deadly weapon, and the enhancement must be stricken on this count.

As Maciel's argument has merit, and does not change the total sentence that is imposed, we will order the trial court strike the section 12022 enhancement.

## IV.     Great Bodily Injury Enhancement on Count 1

As with the weapons use enhancement, the trial court stayed the section 12022.7, subdivision (a) enhancement on count 1, which imposes an additional term of imprisonment when the defendant personally inflicts great bodily injury on the victim during the commission of a felony. We had difficulty understanding Maciel's argument, but the People have interpreted it to suggest that Maciel seeks the sentencing order and the abstract of judgment reflect the enhancement was stayed pursuant to the provisions of section 654. Assuming the People's interpretation is correct, and Maciel did not suggest otherwise in his reply brief, we agree with the People's concession on this point.

### DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court to strike the section 12022, subdivision (b)(1) enhancement on count 1 and to clarify the sentencing order and abstract of judgment to reflect that the section 12022.7, subdivision (a) enhancement on count 1 was stayed pursuant to section 654.